# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK H. JOHNSON (A-72077), | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 4055 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TRACY ENGLESON and GREGORY STROUD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this *pro se* 42 U.S.C. § 1983 suit, Mark H. Johnson, an Illinois prisoner, alleges that Tracy Engleson, a superintendent at Stateville Correctional Center's Northern Reception and Classification Center ("NRC"), and Gregory Stroud, an officer at NRC, violated the First Amendment by retaliating against him for submitting grievances. Doc. 11; *see* Doc. 10 (construing the complaint as stating only a First Amendment claim). Defendants move for summary judgment. Doc. 84. The motion is granted in part and denied in part.

## Background

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Johnson's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in

1

ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Defendants filed a Local Rule 56.1(a)(3) statement with their summary judgment motion. Doc. 85. Most of the relevant factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Defendants also served on Johnson a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Doc. 86.

Local Rule 56.1(b)(3)(B) required Johnson to file a "concise response" to Defendants' Local Rule 56.1(a)(3) statement containing "a response to each numbered paragraph in [Defendants'] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Johnson filed a Local Rule 56.1(b)(3)(B) response that purports to deny some of Defendants' Local Rule 56.1(a)(3) assertions. Doc. 95 at 9-10. But rather than responding individually to each paragraph of the Local Rule 56.1(a)(3) statement, Johnson ignored sixty-four

2

of the seventy paragraphs and addressed the remaining six, though not on a paragraph-by-paragraph basis. Doc. 95 at 9-10. By not responding to Defendants' Local Rule 56.1(a)(3) statement on a paragraph-by-paragraph basis, Johnson violated Local Rule 56.1(b)(3)(B). *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring "a response to each numbered paragraph in the moving party's statement"); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to *clearly identify material facts in dispute* and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a *clear, concise, and obvious fashion, for quick reference of the court*. The district court did not abuse its discretion in finding Curtis failed to comply with Rule 56.1 requirements.") (emphasis added).

That violation could be excused, but the more fundamental flaw in Johnson's Local Rule 56.1(b)(3)(B) response is that he fails to support his denials with citations to evidence in the record. (As shown below, the one denial for which Johnson provides a citation, Doc. 85 at 9-10, is not supported by the cited material.) It follows that, for purposes of summary judgment, the material and properly supported factual assertions set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by

Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (internal quotation marks omitted); *Stevo*, 662 F.3d at 886-87.

There is another flaw in Johnson's Local Rule 56.1(b)(3)(B) response: It makes factual assertions that go well beyond what is reasonably necessary to respond to Defendants' Local Rule 56.1(a)(3) assertions. Doc. 95 at 9-10. A nonmovant seeking to assert facts that go beyond what is fairly responsive to the movant's factual assertions must do so not in a Local Rule 56.1(b)(3)(B) response, but in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 874 (N.D. Ill. 2014); *Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-movant is responding, in a Local Rule 56.1(b)(3)(B) response. Rather, Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement under Local Rule 56.1(b)(3)(C) of any additional facts that require the denial of summary judgment.") (citations and internal quotation marks omitted). This requirement is not an exercise in formalism; rather, "[t]he rationale behind this rule is that if the non-movant includes additional facts in only the Local Rule 56.1(b)(3)(B) response, the movant is unfairly deprived of a vehicle under Local Rule 56.1 to dispute those facts because the rule permits movants to reply only to a Local Rule 56.1(b)(3)(C) statement, not a Local Rule 56.1(b)(3)(B) response." *Hall v. Vill. of Flossmoor Police Dep't*, 2012 WL 6021659, at *8 n.8

(N.D. Ill. Dec. 4, 2012). The court therefore will disregard extraneous facts in Johnson's Local Rule 56.1(b)(3)(B) response. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (affirming the district court's refusal to consider additional facts set forth in the nonmovant's Local Rule 56.1(b)(3)(B) response); *see also Eason v. Nolan*, 416 F. App'x 569, 569-70 (7th Cir. 2011) (same); *Levin v. Grecian*, 974 F. Supp. 2d 1114, 1118 (N.D. Ill. 2013) (similar). An independent ground for disregarding those extraneous facts is that Johnson does not support them with citations to the record.

Likewise, the facts asserted in Johnson's summary judgment brief are disregarded because they are not properly set forth and supported in his Local Rule 56.1(b)(3)(B) response. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (noting that it "is certainly within a district court's prerogative" to decline to consider "any facts that were not contained in the parties' Rule 56.1 statements"); *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of ... presenting additional facts to the district court"); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("[T]he Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)[] statement of additional facts."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("[F]acts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material ... .").

All that said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not ... automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations and internal quotation marks omitted). The court therefore will recite the properly supported facts in Defendants' Local Rule 56.1(a)(3) statement, viewing the facts and inferences therefrom as favorably to Johnson as the record and Local Rule 56.1 allow. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). The court then will determine whether, on those facts, Defendants are entitled to summary judgment. At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Johnson was incarcerated as an inmate at NRC from April 29, 2014 through December 30, 2014. Doc. 85 at ¶ 2. During that time, Engleson was the superintendent of the minimum security unit at NRC, and Stroud was a correctional officer there. *Id.* at ¶¶ 3-4.

In June 2014, Stroud and other officers strip searched Johnson and other inmates before they departed NRC for court appearances. *Id.* at ¶ 7. Stroud directed sexually harassing jokes at Johnson during the search. *Id.* at ¶ 8. Contrary to prison protocol, the officers refused to return Johnson's inmate ID after he came back from court. *Id.* at ¶¶ 9-11. On June 23, Stroud barred Johnson from a meal because he did not have his inmate ID. *Id.* at ¶¶ 12-14.

On July 14, Johnson prepared a grievance about Stroud's conduct during the strip search and barring him from a meal. *Id.* at ¶ 16. Johnson placed the grievance under Engleson's door, but an unknown officer returned it to him. *Id.* at ¶¶ 17-18. On his way to a meal, Johnson handed

6

the grievance to Officer Terry, who brought it to Engleson. *Id.* at ¶¶ 19-20. Johnson does not know what happened to the grievance during the meal. *Id.* at ¶¶ 19, 21. After the meal, Johnson saw Engleson come out of her office and hand Stroud a grievance. *Id.* at ¶ 22. Stroud then approached Johnson with the grievance, told him to pack his things, and moved him to the maximum security unit at NRC. *Id.* at ¶ 23. Although Johnson could not see his name on the grievance Stroud was holding, he inferred that it was his. *Id.* at ¶ 25; Doc. 85-1 at 10 (pp. 34-35). (Defendants' assertion that Johnson "does not know whether" the grievance was his, Doc. 85 at ¶ 25, misconstrues the cited testimony, which describes Johnson's reasons for concluding that the grievance in fact was his, Doc. 85-1 at 10 (p. 35).)

Johnson was assigned to the maximum security unit that day and stayed there until he was assigned back to the minimum security unit some three months later. Doc. 85 at ¶¶ 27, 32. He never received a response to his July 14 grievance. *Id.* at ¶ 28.

On November 10, Johnson was among about twenty inmates involved in a physical altercation while waiting in line for haircuts. *Id.* at ¶¶ 33-35. The barber told Stroud about the altercation, and Stroud instructed the inmates to return to their assigned areas. *Id.* at ¶ 36. When the inmates came back from lunch, a sergeant and other officers stopped them, threatened the entire unit (about forty to fifty inmates) because of the way they had treated the barber, and told them not to be surprised by what they saw when they returned to their unit. *Id.* at ¶¶ 39, 41. When the inmates returned, they saw that their sheets, mattresses, and boxes had been tossed on the floor and the toilet, and that coffee had been poured on the mattresses. *Id.* at ¶¶ 42-43.

Johnson submitted a grievance regarding the ransacking of his unit, alleging that it was in retaliation for his filing the July 14 grievance. *Id.* at ¶¶ 43-45. Johnson believes that the

ransacking was retaliatory because one of his cellmates told him that Stroud "stands over" Johnson when Stroud performs count. *Id.* at ¶ 46. Johnson put the grievance under Engleson's door but never received a response. *Id.* at ¶¶ 47-48. On November 11, Johnson sent a letter to the Illinois Department of Corrections ("IDOC") describing the ransacking but not mentioning Stroud. *Id.* at ¶¶ 50-51.

On December 15, Johnson submitted a grievance complaining that an officer, also named Johnson, told the barber not to cut his hair because Johnson had previously submitted a grievance. *Id.* at ¶ 52. Johnson placed that grievance under Engleson's door. *Id.* at ¶ 54. Later that day, Officer Johnson came to Johnson's cell and told him to pack up, and Johnson was again assigned to the maximum security unit. *Id.* at ¶ 55.

Johnson was transferred out of NRC on December 30. *Id.* at ¶ 56. He did not receive any mental health or medical treatment as a result of being placed in maximum security. *Id.* at ¶ 70.

Engleson has no independent recollection of Johnson. *Id.* at ¶ 60. As superintendent of NRC's minimum security unit, Engleson's duties included: (i) supervising the unit's correctional staff; (ii) ensuring that inmates were assigned to school or work; and (iii) ensuring that all operations were completed and secure. *Id.* at ¶ 57. Engleson asserts that she was not personally involved in the offender grievance process, that she never reviewed Johnson's grievances, and that correctional counselors reviewed grievances. *Id.* at ¶¶ 58-59. According to Engleson, any grievance an offender slipped under her office door would be picked up by another correctional officer and handed to a correctional counselor for review. *Ibid.* (Johnson's Local Rule 56.1(b)(3)(B) response attempts to dispute these assertions, but the exhibit he cites contains only a request for information addressed to Engleson and his November 11 letter to the IDOC, neither of

which calls into question Defendants' assertions about Engleson's role. Doc. 95 at 9-12. These assertions are thus deemed admitted. *See Curtis*, 807 F.3d at 218.)

During discovery, Engleson reviewed Johnson's living unit history and determined that he should have been placed in the maximum security unit for his entire stay at NRC. *Id.* at ¶ 66. The reason is that Johnson was frequently transferred from NRC for court appearances, and thus should have automatically been classified under prison policy as a "moderate" escape risk. *Id.* at ¶¶ 63-64. NRC inmates with that classification are supposed to be placed in maximum security units. *Id.* at ¶ 65. Despite this policy, the NRC placement officer twice assigned Johnson to the minimum security unit. *Id.* at ¶ 67.

Defendants assert that Stroud was not responsible for any part of the grievance process and did not review Johnson's grievances. *Id.* at ¶¶ 61-62. However, that assertion is not supported by the cited materials and thus will be disregarded. Doc. 85-2 at ¶ 3 (describing Engleson's and the correctional counselors' role in the grievance process, without reference to Stroud); Doc. 85-4 at ¶ 7 (Defendants' answer denying Johnson's allegation that Engleson handed Stroud the July 14 grievance, which is off-point and not evidence in any event, *see Cent. Ill. Light Co. v. Consolidation Coal Co.*, 349 F.3d 488, 493 (7th Cir. 2003)).

## Discussion

Johnson alleges that he suffered retaliation on three occasions: (1) when he was transferred to the maximum security unit on July 14, 2014 in retaliation for that day's grievance regarding the strip search and denial of a meal; (2) when his living unit was ransacked on November 10, also in retaliation for the July 14 grievance; and (3) when he was transferred to the

maximum security unit on December 15 in retaliation for that day's grievance regarding the denial of a haircut. Defendants seek summary judgment as to liability and damages.

To survive summary judgment, a retaliation plaintiff must adduce evidence that would permit a reasonable jury to find that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation at the defendant's hands that would likely deter future First Amendment activity; and (3) his First Amendment activity was at least a motivating factor in the defendant's action. *See Consolino v. Townes*, 872 F.3d 825, 829 (7th Cir. 2017); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). If the plaintiff makes this prima facie case, the burden shifts to the defendant to rebut the causal inference with evidence showing that she would have taken the same action even absent the protected activity. *See Consolino*, 872 F.3d at 829; *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). If the defendant provides a legitimate reason for her action, then "the burden shifts back to the plaintiff to demonstrate that the proffered reason [is] pretextual and that the real reason was retaliatory animus." *See Milliman v. Cnty. of McHenry*, 893 F.3d 422, 431 (7th Cir. 2018) (internal quotation marks omitted); *see also Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Milliman*, 893 F.3d at 431 (internal quotation marks omitted).

I.   **Liability**

   A.   **Prima Facie Case**

   1.   **Transfer to Maximum Security on July 14, 2014**

As to the July 14 transfer, Defendants do not dispute that the record supports the first two elements of Johnson's prima facie case. Grieving about prison conditions is protected First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("Prisoners are entitled to utilize available grievance procedures without threat of recrimination ... ."). And transferring a prisoner from minimum to maximum security would likely deter future First Amendment activity. *See Gomez*, 680 F.3d at 862, 866-67 (holding that transferring an inmate to a facility where he had "known enemies" would likely deter future First Amendment activity); *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996) (holding that a prisoner stated a claim by alleging a retaliatory transfer to a unit with more restrictions and fewer privileges).

Defendants instead focus on the third element, arguing that Johnson has failed to adduce evidence that the July 14 transfer was motivated by the grievance he filed earlier that day. Doc. 87 at 8-9. Defendants contend that Johnson relies on timing alone to establish causation, and that timing alone cannot forestall summary judgment. They are incorrect.

It is true that "suspicious timing alone is *rarely* enough to create an inference of retaliatory motive." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) (emphasis added). But rarely is not never, particularly where, as here, the protected activity and the adverse action occurred on the same day. Johnson may rely on "[c]ircumstantial proof, such as the timing of events ... to establish the defendant's retaliatory motive," *Massey v. Johnson*, 457 F.3d 711, 716-

11

17 (7th Cir. 2006), and timing alone can suffice when the adverse action "follows close on the heels of protected expression," *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012); *see also Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) ("Occasionally, ... an adverse action comes so close on the heels of a protected act that an inference of causation is sensible."). After all, "[t]he closer two events are, the more likely that the first caused the second." *Loudermilk*, 636 F.3d at 314-15. "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [courts] typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell*, 679 F.3d at 966.

Viewing the facts in the light most favorable to Johnson—he submitted a grievance and, within the time required for one meal, the grievance ended up in Defendants' possession, at which point they ordered his transfer to maximum security—that is precisely what happened here. On this record, a reasonable jury could conclude that the grievance at least partially motivated the adverse action. *See Loudermilk*, 636 F.3d at 315 (holding that timing was enough to raise an inference of causation where an employee was fired immediately after handing his supervisor a note expressing concerns about workplace discrimination); *Pendegraft v. Butalid*, 2018 WL 1565613, at *13 (S.D. Ill. Mar. 30, 2018) (same, where an inmate asked for a grievance form and was immediately placed in segregation).

Defendants next argue that they could not have been motivated by Johnson's grievance because they did not know about it. Doc. 87 at 5-8. In support, they maintain that they were not generally responsible for reviewing grievances, that they did not review Johnson's grievances in particular, and that Johnson offers nothing but "conjecture" that they reviewed his July 14 grievance prior to transferring him because he testified that he could not see whether the

grievance in Stroud's hands was in fact *his* grievance. *Ibid.* These facts, were they to stand alone, would warrant summary judgment by defeating any inference that Defendants' transfer of Johnson to maximum security was motivated by his grievance. But these facts are contradicted by the other facts discussed below, and those other facts would allow a jury to find a causal connection between the grievance and the transfer. *See Loudermilk*, 636 F.3d at 314 (holding that conflicting testimony by the plaintiff and his supervisor as to whether the supervisor read the plaintiff's note raised a genuine issue as to the supervisor's knowledge of the note's contents).

In deciding a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). As noted, circumstantial evidence may establish causation for a retaliation claim. *See Kidwell*, 679 F.3d at 965. The record would allow a jury to find the following facts: Johnson handed his grievance to Officer Terry; Terry told Johnson that he would give the grievance to Engleson; Terry walked toward Engleson's office; Johnson went to a meal; when Johnson returned, Engleson emerged from her office and hand a grievance to Stroud; and then Stroud, grievance in hand, ordered Johnson to pack his belongings for a transfer to maximum security. This course of events would allow a reasonable jury to conclude that it was indeed Johnson's grievance that Engleson gave to Stroud moments before Stroud ordered Johnson to pack up for maximum security. Thus, a reasonable jury could find that Defendants knew about Johnson's protected activity—the fact that he submitted a grievance—at the time they took adverse action.

Johnson has therefore established a prima facie case of retaliation as to his July 14 transfer to maximum security.

### 2. Ransacked Living Unit on November 10, 2014

By contrast, no reasonable jury could find that the ransacking of Johnson's living unit on November 10 was motivated by his July 14 grievance. As an initial matter, there was a four-month lapse between the grievance and the alleged retaliatory conduct. The Seventh Circuit has held that comparable time lags between First Amendment activity and adverse conduct may, standing alone, be "too long to permit a reasonable inference of retaliation." *Shaw v. Litscher*, 715 F. App'x 521, 523 (7th Cir. 2017) (seven months); *see also Kidwell*, 679 F.3d at 966-67 (five weeks); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (four months).

But more fundamentally, Johnson was not singled out for a ransacking; his entire unit and the belongings of forty or fifty inmates were ransacked after half the unit was involved in a physical altercation. No reasonable jury could conclude on this record that the ransacking resulted from Johnson's being singled out in retaliation, as it would be sheer speculation to assume that the entire unit was ransacked to conceal that the real target was Johnson and his four-month old grievance. *See Consolino*, 872 F.3d at 830 ("[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment."); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) ("[O]ur favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture.") (brackets and internal quotation marks omitted). Given this, Johnson cannot establish a prima facie case of retaliation as to the ransacking.

### 3. Transfer to Maximum Security on December 15, 2014

For the reasons set forth in discussing the July 14 transfer, Johnson has met his prima facie case as to the December 15 transfer to the maximum security unit. The protected activity and

14

adverse action elements are not in dispute. And the fact that Johnson's transfer was ordered the very day he submitted his grievance supports an inference of causation. *See Kidwell*, 679 F.3d at 966; *Loudermilk*, 636 F.3d at 315; *Pendegraft*, 2018 WL 1565613, at *13.

As with the July 14 transfer, Defendants argue that they could not have been motivated by Johnson's grievance because they did not know about it. Doc. 87 at 6-8. The argument fails as to Engleson, given the evidence that Johnson slid the grievance under her door on the day of his transfer. The argument succeeds as to Stroud, as there is no record evidence indicating that he had any involvement in the December 15 transfer. It follows that Stroud cannot be held liable for that transfer. *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation.") (internal quotation marks omitted).

### B. Defendants' Nonretaliatory Explanation

Although Defendants adduce no evidence explaining *why* they decided to transfer Johnson to the maximum security unit on July 14 and December 15, they assert that they deserve summary judgment because, as Engleson explained, NRC policy provided that Johnson in fact should have been in maximum security all along. But the fact that Johnson *should* have been in maximum security is not evidence of what *actually motivated* the transfers. Defendants did not testify, for example, that on the days of the transfers, they (or anyone else) received documents indicating that Johnson was soon due in court, discovered that he had been erroneously designated to minimum security, and then transferred him to maximum security correct the error.

Given this, Defendants' attempt to rely on NRC's policy fails. Johnson's claim is not that he had a constitutional right to be housed in minimum security, but rather that he was removed

from minimum security and sent to maximum security in retaliation for exercising his First Amendment rights. "The viability of a retaliation claim does not hinge on whether the plaintiff has a ... right [to] the ... benefit that has been taken away from him as retaliation for his speech." *Trepanier v. Ryan*, 2003 WL 21209832, at *4 (N.D. Ill. May 21, 2003). Rather, "[a]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Gomez*, 680 F.3d at 866; *see also Hoskins*, 395 F.3d at 374-75 (holding that placing a prisoner in segregation for two months and then transferring him "implicated no federally protected liberty interest" and thus did not "independently violate the Constitution," but could "form the basis for a retaliation claim, if ... done with an improper, retaliatory motive"). Accordingly, it makes no difference that Defendants had the authority under NRC policy to transfer Johnson to maximum security all along. Rather, what matters is that the record, viewed in the light most favorable to Johnson, would allow a reasonable juror to find that Defendants acted on improper grounds, transferring Johnson in retaliation for his grievances.

In sum, Defendants have not proffered a legitimate, nonretaliatory motive for the two transfers that would shift the burden back to Johnson. They are therefore not entitled to summary judgment on Johnson's claim arising from the transfers.

## II. Damages

Defendants argue that the Prison Litigation Reform Act ("PLRA") bars Johnson from recovering compensatory damages because he did not suffer a physical injury as a result of his transfers to and time spent in the maximum security unit. Doc. 87 at 10-11. The PLRA states: "No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered

16

while in custody without a prior showing of physical injury ... ." 42 U.S.C. § 1997e(e). Defendants' argument fails because the court cannot determine on the summary judgment record whether Johnson suffered a physical injury due to his time in maximum security. Doc. 85 at ¶ 70 (asserting only that Johnson "did not receive any mental health or medical treatment as a result of the alleged retaliation"). Defendants are free to renew this argument at trial.

## Conclusion

Defendants' summary judgment motion is granted in part and denied in part. The motion is granted as to Johnson's claim regarding the November 10, 2014 ransacking of his unit, and also as to Johnson's claim against Stroud regarding his December 15, 2014 transfer to maximum security. Johnson's claim regarding his July 14, 2014 transfer to maximum security shall proceed to trial against Engleson and Stroud, and his claim regarding the December 15, 2014 transfer shall proceed to trial against Engleson.

September 5, 2018

_____
United States District Judge